J-S44021-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOEL SENESTANT, | |
| Appellant | No. 1311 EDA 2015 |

Appeal from the Judgment of Sentence March 27, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015924-2013, CP-51-CR-0015925-2013

BEFORE: BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED SEPTEMBER 01, 2017**

Appellant, Joel Senestant, appeals from the judgment of sentence entered following his convictions of one count each of aggravated assault, firearms not to be carried without a license, possession of an instrument of crime, intimidation of a witness, retaliation against a witness, and possession of a firearm by prohibited person.[1]  We affirm.

The trial court set forth the underlying facts of this case as follows:

Facts supporting the verdicts of guilty stemmed from events beginning October 24, 2013 when a shooting occurred on the 800 Block of North 66th Street in Philadelphia.  Specifically, Philadelphia Police Officer John Rubino responded to a radio call for a person with a gun and a person shot on the highway.  (N.T.

---

[1]  18 Pa.C.S. §§ 2702(a)(1), 6106(a)(1), 907, 4952(a)(1), 4953, and 6105(a)(1), respectively.

01/23/2015, pp. 151-152). Upon arriving at 878 North 66th Street, Officer Rubino came into contact with the victim Vernon Oliver sitting inside his residence at 878 North 66th Street, profusely bleeding from his lower left leg. (N.T. 01/23/2015, pgs. 151-152). During the investigation Officer Rubino learned that Mr. Oliver was approached by a black male, around five-foot-eight, glasses, wearing a gray hoodie. This male pulled out a handgun and started shooting multiple times at Mr. Oliver as he fled in fear into his residence. Mr. Oliver was transported to Hospital of the University of Pennsylvania by medics and treated for his leg injuries and loss of blood. *Id*.

Detective Deayoung Park credibly testified that he arrived on scene after uniformed Philadelphia police officers secured the scene where he recovered three fire cartridge casing (FCC) for a .22 caliber firearm. After leaving the crime scene, Detective Park had a brief opportunity to speak with Mr. Oliver at the hospital. Mr. Oliver stated to Detectives that he had recognized the male who shot him. Detective Park further testified that Mr. Oliver was obviously in so much pain, he told Mr. Oliver follow-up would continue at the police station the next day. (N.T. 01/23/2015, pgs. 164-168).

Mr. Oliver again indicated that he recognized the male who shot him as someone from the neighborhood, named "Joel." He further explained that "Joel" was the same man whom he had had an argument with on October 23, 2013, the night before the shooting. (N.T. 01/23/2015, pg. 168). During trial, Philadelphia Police Officer James Little testified that he responded to the area of 878 North 66th Street in Philadelphia on October 23, 2013. Earlier that evening there had been a radio call for a person with a gun. (N.T. 01/23/2015, pg. 159). Upon arriving on location, Officer Little had not found a victim. *Id*. On that same night in question, October 23, 2013, Officer Rubino also responded to a radio call in the same area of the 800 block of North 66th Street. (N.T. 01/23/2015, pg. 148). Specifically, Officer Rubino responded to the same general area of 66th and Leeds Street for a robbery in progress. The complainant on that night was a white male, who told officers he had been robbed by approximately 10 black males for his Xanax pills[.] (N.T. 01/23/2015, pg. 148). Mr. Oliver further verified the occurrence of a robbery on October 23, 2013 when he testified at trial on January 23, 2015.

While Mr. Oliver was an extremely reluctant witness, the trial court determined that his prior recorded statements to police officers about the robbery were credible and corroborated. Specifically, the Commonwealth confirmed through Mr. Oliver's previous statements to police that he had earlier witnessed a group of black males surrounding and talking to the "white dude." (N.T. 01/23/2015, pg. 72). Mr. Oliver further recalled seeing the police canvasing the area. About fifteen minutes after the police left the area, Mr. Oliver took his dog for a walk and asked some young guys in the area about what happened. *Id*. He further testified that while walking his dog he noticed some blue-shaped pills on the ground. After he bent down to pick the pills up, a black male wearing glasses and a hoodie walked up stating "give me money for my pills." (N.T. 01/23/2015, pgs. 73-74). Mr. Oliver testified that during the verbal exchange with this black male, he recognized him to be Joel from the neighborhood. *Id*. After arguing over whose pills were on the ground, Mr. Oliver smacked [Appellant's] hands off of him because [Appellant] attempted to grab Mr. Oliver while screaming for his money. Additionally, Mr. Oliver's statements to police corroborated that the man whom he had an altercation over Xanax pills with on October 23, 2013, was the same person, [Appellant], who shot him in the lower left leg on October 24, 2013. *Id*. The entire testimony established [Appellant] to be the individual involved on both nights in question.

Detective Park also testified that after Mr. Oliver left Southwest Detectives on October 25, 2013, Mr. Oliver contacted detectives regarding a number of threatening phone calls he received on his cell phone. Detective Park convinced Mr. Oliver to report the threats to him to Detectives from the Southwest Division on October 30, 2013. In this second interview, Mr. Oliver reported that he received two blocked phone calls after leaving a CVS pharmacy to fill his prescription on October 25, 2013. Mr. Oliver stated to Detective Park that he recognized the voice to be that of [Appellant]. Mr. Oliver stated that [Appellant] threatened him during the two phone calls. In the first telephone call, he remembered [Appellant] saying: "You know why I shot you." Within the second phone call [Appellant] stated: "You lucky I didn't get you coming from the CVS." (N.T. 01/23/2015, pp. 173-176).

- 3 -

Southwest Detectives searched the incoming phone records of [Mr.] Oliver's phone and discovered two incoming calls to [Mr.] Oliver's telephone recorded from the number (484)-751-[****] one minute apart from each other. Pursuant to a duly authorized search warrant for [Appellant's] residence, detectives recovered a blue pre-paid Cricket cellular telephone and a black iPhone. Since it was a pre[-]paid cell phone, subscriber information could not be found in the database detectives use when searching for information pertaining to a specific phone. Detective Park, however, testified that a name must be associated with a pre[-]paid cell phone, and in this instance, the name "Bad man" was listed for the Cricket cell phone. Upon further investigation it was determined that the number associated with the Cricket cell phone recovered from [Appellant's] house matched the repeated incoming calls to [Mr.] Oliver. (N.T. 01/23/2015, pp. 179-185).

Trial Court Opinion, 4/8/16, at 5-8.

In addition, the trial court summarized the procedural history of this case as follows:

The underlying case stems from the November 23, 2015 arrest of [Appellant] for shooting Vernon Oliver in front of the victim's residence in the 800 Block of North 66th Street in Philadelphia on October 24, 2015, and for subsequently repeatedly threatening the same shooting victim. Following arraignment, preliminary hearing and filing of charging Bills Of Information the charges docketed under CP-51-CR-0015924-2013 included Criminal Attempt-Murder §901 §§A, Felony First Degree, Aggravated Assault, §2702 §§A1 Felony First Degree, Possessing Instrument of Crime §907 §§A, Misdemeanor First Degree, and enumerated Violations of the Uniform Firearms Act including offenses under §6105 §§A1- Carrying A Firearm as a Prohibited Person, Felony Second Degree; F-2, §6106 §§A1- Firearms Not To Be Carried Without License, Felony Third Degree; §6108 Carrying Firearm Public Street In Philadelphia, Misdemeanor First Degree. The charges of Intimidation of a Witness, §4952 §§A1, Felony First Degree, and Retaliation Against a Witness, §4953§§A, Felony Third Degree were docketed under CP-51-CR-0015925-2013. All charges were consolidated for a jury trial.

On January 20, 2015, jury selection began before the Honorable Anne Marie B. Coyle[,] Judge of the Court of Common Pleas for the First Judicial District. After several jurors were selected, Pierre LaToure, Esquire, as trial counsel for [Appellant], raised an untimely objection to the method which the trial court had prioritized available randomly selected jurors based upon the prospective juror written responses on their completed written questionnaire forms. Although the trial court did not agree to the belated objection, the trial court gave [Appellant] more benefit than due and granted [Appellant's] requested remedy. This Court dismissed all previously selected jury panel members, and began the selection process anew before any panel was sworn. Inexplicably, after this Court granted [Appellant's] motion, [Appellant], by and through his counsel, orally moved for this [c]ourt's recusal on January 22, 2015 alleging judicial bias without supporting basis. Hearing zero legitimate reason for this request, this [c]ourt properly denied the Motion for Recusal. An entirely new jury panel was empaneled without any further claim of judicial bias.

On January 28, 2015, the jury entered verdicts of guilty to the charges of Aggravated Assault, § 2702 §§ A1 (F1), Firearms Not To Be Carried Without A License, 18 § 6106 §§ A1 (F3), Possession of an Instrument of Crime, 18 § 907 §§ A1 (M1), Intimidation of a Witness, § 4952 §§ A1 (F3), and Retaliation Against a Witness, §4953 §§ A (F3). The jury returned [a] verdict of not guilty to Criminal Attempt-Murder § 901 §§ A (F1). Pursuant to agreement of the parties, the bifurcated offense of Possession of Firearm By Prohibited Person under 18 §6105 A1 (F2) was incorporated into the record and the trial court recorded the corresponding verdict of guilty to this charge consistently with the jury verdicts. Subsequent to the entry of the verdicts, on January 28, 2015, this [c]ourt directed that comprehensive sentencing evaluations and mental health assessments to be completed of [Appellant] via authorized investigators and evaluators of the Court of Common Pleas Trial Division Adult Probation and Parole Department and scheduled the sentencing hearing for March 27, 2015.

On March 27, 2015 this Court incorporated into the record all relevant data concerning [Appellant] from the completed Presentence Investigation Reports and Mental Health Assessments. A full and fair sentencing hearing was conducted with all parties given the opportunity to be heard. After carefully

assessing all material sentencing factors including the required imposition of the applicable mandatory sentencing requirements for this individual, and the calculated sentencing guideline recommendations, this Court imposed the following sentences under CP-51-CR-0015924-2013 relative to the shooting of [Mr.] Oliver:

> Count 2: 18 Pa.C.S.A. § 2702 §§A1-Aggravated Assault (F1): State term of confinement for a minimum of 10 years to maximum 20 years; and
>
> Count 3: 18 Pa.C.S.A. § 6105 §§A1-Possession Of Firearm Prohibited (F2): State term of confinement for a minimum of 4 years to maximum of 10 years state term [of] confinement to run consecutively to confinement imposed for Count 2; and
>
> Count 4: 18 Pa.C.S.A. § 6106 §§A1-Firearms Not To Be Carried Without A License (F3): State term of confinement for a minimum period of 3 years and a maximum a period of 7 years to run consecutively to confinement imposed for Count 3; and
>
> Count 6: 18 Pa.C.S.A. § 907 §§A-Possession Instrument of Crime- No further penalty-Merged with Count 4.

This Court imposed the following sentences under CP-51-CR-0015925-2013 for separate charges stemming from the subsequent threats and intimidation of the shooting victim:

> Count 1: 18 Pa.C.S.A. § 4952 §§A1-Intimidation Witness/Victim-Refrain From Reporting (F1): State term of confinement for a minimum period of 5 years and a maximum a period of 10 years to run consecutively to confinement imposed under CP-51-CR-0015924-2013 Count 4; and
>
> Count 2: 18 Pa.C.S.A. § 4953 §§A-Retaliation Witness/Victim (F3): State term of confinement for a minimum period of 3 years six months and a maximum a period of 7 years to run consecutively to

confinement imposed under CP-51-CR-0015925-2013 Count 1.

The aggregate sentences for the charges related to the shooting event was a period of state confinement from a minimum of 17 years to a maximum of 37 years. The aggregate sentence for the crimes related to the subsequent threatening intimidation of [Mr.] Oliver was a period of state confinement from a minimum of 8½ years to a maximum of 17 years. Thus, the total sentence for all offenses was a period of state confinement from a minimum of 25½ years to a maximum of 59 years. The remaining charges were Nolle Prossed. The conditions of the sentences imposed included stay away from the victim and payment of fines and costs.

Trial Court Opinion, 4/8/16, at 1-4.

Appellant did not file post-sentence motions. On April 20, 2015, Appellant filed this timely appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did the trial judge show such bias against [Appellant] during jury selection that she should have recused herself?

2. Was the evidence presented at trial sufficient to show that [Appellant] intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life caused or attempted to cause serious bodily injury to the complainant?

3. Did the trial court abuse its discretion by:

a. sentencing defendant in the aggravated range for Retaliation Against a Witness without identifying any aggravating factors?

b. sentencing defendant to an aggregate sentence of 306 to 648 months without considering the particular circumstances of the offense and the character of [Appellant] or referring to [Appellant's]

> prior criminal record, age, personal characteristics, and potential for rehabilitation?
>
> c. failing to consider any mitigating factors?

Appellant's Brief at 5-6.

Appellant first argues that the trial court erred in refusing to recuse itself. Appellant's Brief at 15-23. Appellant asserts that the trial court's conduct during the jury selection process evidenced an intent to increase the chances of Appellant's conviction.

The standard of review for the recusal of judges is as follows:

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are "honorable, fair, and competent," and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.
>
> > The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. "Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion."

*Commonwealth v. Postie*, 110 A.3d 1034, 1037 (Pa. Super. 2015) (quoting *Commonwealth v. Harris*, 979 A.2d 387, 391-392 (Pa. Super. 2009)) (citations omitted).

The trial court thoroughly addressed this issue of the request for recusal as follows:

> In the instant case, Pierre LaToure, Esquire, as [Appellant's] trial attorney, motioned for this court's recusal after this [c]ourt reluctantly granted [Appellant's] requested

remedy to dismiss the previously agreed upon and selected jurors. The originally stated reason for the request to dismiss jury panelists was rooted in an untimely objection to the [c]ourt's acknowledged and accepted practice of prioritizing prospective jurors. As both attorneys were aware, this [c]ourt divided the packet of 40 random prospective panelists sent from the jury room pool into priority "A" and "B" list based upon previously recorded written responses on the jury questionnaire form that indicated the level of a panelist's willingness and ability to fairly serve as a juror. Copies of the questionnaire sheets, which reflected the divided groups, are given to both parties through their counsel to review before and during jury selection process. No objection was raised by either party or their respective counsel as to the trial court's method until most of the prospective panel members had been selected as agreed upon jurors and the "B" list members were no longer available.

Belatedly, [Appellant], by and through his counsel, raised an objection and argued that it was unfair that the trial court included two prospective pool members into the "B" list because they answered they were less likely to believe the testimony of a police officer or law enforcement official solely based on that person's job in law enforcement. Counsel for [Appellant] argued that since the [c]ourt included in the "A" list persons, who had answered in the affirmative to the written question: "Are you are more likely to believe the testimony of a police officer or law enforcement just because of that person's job," persons who had responded that they were less likely to believe police officers or persons in law enforcement just because of their position should have also been included in the "A" list.

This [c]ourt believed that [Appellant's] objection to the method of jury selection was waived because it was untimely raised. This [c]ourt disagreed with [Appellant's] assumption of the equality of the prospective juror's reasoning for such differences in responses did not necessarily follow with respect to potential rehabilitation. This [c]ourt concluded from past experience that it was far often easier to rehabilitate a prospective juror who indicated affirmative respect or preference for law enforcement than a juror who began the questionnaire process with a bias against law enforcement. The prospective rehabilitative measure[s] are not equal because the human motivations for the opposing answers differ.

- 9 -

As to the waiver issue, Defense counsel raised the objection after a full day of jury selection completed with the "A" and "B" method as described. He claimed that he had misunderstood this [c]ourt's process. Ironically, only two additional prospective jurors would have been added to [Appellant's] preference of "A" grouping. As all parties were aware those jurors were no longer available. In an abundance of caution, and to avoid any semblance of an appellate issue including ineffectiveness of counsel, this [c]ourt reluctantly granted [Appellant's] Motion to strike the entire picked panel and begin the jury selection process anew.

[Appellant], by and through his attorney, immediately followed this [c]ourt's granting of [Appellant's] requested remedy with a Motion For Recusal of this [c]ourt citing a bald allegation of judicial bias. This Motion For Recusal was properly denied on January 22, 2015 as a blatant attempt [at] forum shopping. The record reflects no legitimate basis for counsel's argument about judicial bias. This [c]ourt properly conducted the voir dire process with a brand new panel of forty prospective jurors with . . . no priority given beyond the number assigned in random order from the jury room. This [c]ourt no longer divided any jury group into "A" or "B" list order for inquiry.

This [c]ourt fairly conducted an individual colloquy of each potential juror with zero complaint of judicial bias. In short, this [c]ourt granted a motion by counsel for a new jury, dismissed an entire jury panel, and fairly conducted [] individual colloquies of forty new potential jurors employing no priority selection. Additionally, this argument fails because this [c]ourt was not the finder of fact in this jury trial.

Trial Court Opinion, 4/8/16, at 9-11.

Our review of the record fails to reflect any evidence presented by Appellant to establish that a conflict existed that would necessitate a recusal by Judge Coyle. Rather, Appellant's assertion of a conflict warranting recusal is a baseless allegation. Accordingly, we discern no bias, prejudice, or unfairness on the part of Judge Coyle; nor is there any indication in the

record that she abused her discretion in denying Appellant's recusal motion. **Postie**, 110 A.3d at 1037. Hence, Appellant's first claim fails.

Appellant next argues that the Commonwealth did not present sufficient evidence to support his conviction of aggravated assault. Appellant's Brief at 24-28. Specifically, Appellant asserts that there was no evidence presented at trial of any statements made before or during the attack that might indicate an intent to inflict injury. **Id**. at 26. Appellant contends that "the intention of the shooter was far from obvious." **Id**. at 27.

We analyze arguments challenging the sufficiency of the evidence under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

**Commonwealth v. Trinidad**, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting **Commonwealth v. Emler**, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

- 11 -

The crime of aggravated assault is set forth at 18 Pa.C.S. § 2702 and provides in relevant part as follows:

**(a) Offense defined.—**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. . . .

18 Pa.C.S. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

As we expressed in *Commonwealth v. Fortune*, 68 A.3d 980 (Pa. Super. 2013):

For aggravated assault purposes, an "attempt" is found where an accused who possesses the required, specific intent acts in a manner which constitutes a substantial step toward perpetrating a serious bodily injury upon another. An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances.

*Id*., at 984 (citations omitted). In addition, the Court in *Fortune* summarized the following:

The Pennsylvania Supreme Court in *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887 (Pa. 1978) created a totality of the circumstances test to be used to evaluate whether a defendant acted with the necessary intent to sustain an aggravated assault conviction. In *Commonwealth v. Matthew*, 589 Pa. 487, 909 A.2d 1254 (2006), that Court reaffirmed the test and articulated the legal principles which apply when the Commonwealth seeks to prove aggravated

assault by showing that the defendant attempted to cause serious bodily injury. Specifically, the Court stated, in relevant part, that:

> *Alexander* created a totality of the circumstances test, to be used on a case-by-case basis, to determine whether a defendant possessed the intent to inflict serious bodily injury. *Alexander* provided a list, albeit incomplete, of factors that may be considered in determining whether the intent to inflict serious bodily injury was present, including evidence of a significant difference in size or strength between the defendant and the victim, any restraint on the defendant preventing him from escalating the attack, the defendant's use of a weapon or other implement to aid his attack, and his statements before, during, or after the attack which might indicate his intent to inflict injury. *Alexander*, at 889. *Alexander* made clear that simple assault combined with other surrounding circumstances may, in a proper case, be sufficient to support a finding that an assailant attempted to inflict serious bodily injury, thereby constituting aggravated assault.

> *Matthew*, 909 A.2d at 1257 (citation and quotation marks omitted). The Court indicated that our case law does not hold that the Commonwealth never can establish a defendant intended to inflict bodily injury if he had ample opportunity to inflict bodily injury but did not inflict it. Rather, the totality of the circumstances must be examined as set forth by *Alexander*.

*Fortune*, 68 A.3d at 984. In *Commonwealth v. Hall*, 830 A.2d 537, 542 (Pa. 2003), our Supreme Court stated that in cases "[w]here the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct."

The trial court addressed Appellant's challenge to the sufficiency of the evidence with the following apt discussion:

- 13 -

Applying the totality of the circumstances test from **Alexander**, as well as the holding from **Matthew**, [Appellant] in the instant case possessed the requisite specific intent to cause serious bodily injury. While the complainant, Mr. Oliver, talked with a friend outside [of] his house, [Appellant] purposefully approached him, shot at him multiple times, and in so doing caused serious injury to his lower left leg. On the night of October 23, 2013, [Appellant] and Mr. Oliver g[o]t into an argument over ownership of previously dropped Xanax pills in a botched robbery of another male. [Appellant] demand[ed] payment for them. The two men scuffle[d], and Mr. Oliver ha[d] to push the hand of [Appellant] off of him in order to get away and continue to walk his dog home. On the following evening, October 24, 2013, [Appellant] approached Mr. Oliver again, aimed and fired multiple times from a [.]22 caliber handgun at close range, and striking him in the lower left leg as Mr. Oliver fled into his home. Within those critical moments, [Appellant] manifested an extreme disregard for [Mr.] Oliver's life.

[Appellant] confirmed that he had the prerequisite malicious intent when he shot at [Mr.] Oliver, and when he subsequently threatened him commenting that he should have finished him off outside the drug store. Thus, the totality of the evidence amply supports the conviction of Aggravated Assault.

Trial Court Opinion, 4/8/16, at 13-14.

We have thoroughly reviewed the certified record before us on appeal, and we agree with the trial court's determination that the Commonwealth presented sufficient evidence to establish beyond a reasonable doubt that Appellant committed the crime of aggravated assault. Accordingly, Appellant's contrary claim lacks merit.

Appellant's final argument is that the trial court abused its discretion in fashioning his sentence. Appellant's Brief at 29-35. Appellant claims that he should not have been sentenced within the aggravated range for the crime of retaliation against a witness, that the sentencing court failed to properly

consider the statutory sentencing factors, and the court failed to consider mitigating factors. *Id*. at 32-35.

We note that our standard of review is one of abuse of discretion. Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006). It is well settled that there is no absolute right to appeal the discretionary aspects of a sentence. *Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)).

Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Moury*, 992 A.2d at 170 (citing *Commonwealth v. Mann*, 820 A.2d 788 (Pa. Super. 2003)). In *Commonwealth v. Reeves*, 778 A.2d 691 (Pa. Super. 2001), we reaffirmed the principle articulated in *Commonwealth v. Jarvis*, 663 A.2d 790 (Pa. Super. 1995), wherein this Court observed that, although Pa.R.Crim.P. 1410 (presently Rule 720) characterizes post-sentence motions as optional, the rule expressly provides that only issues raised in the trial court will be deemed preserved for appellate review. *Reeves*, 778 A.2d at 692. Applying this principle, the *Reeves* Court held that an objection to a discretionary aspect of a sentence is waived if not raised in a post-sentence motion or during the sentencing proceedings. *Id*. at 692-693. *See also Commonwealth v. Parker*, 847 A.2d 745 (Pa. Super. 2004) (holding challenge to discretionary aspect of sentence was waived because appellant did not object at sentencing hearing or file post-sentence motion); *Commonwealth v. Petaccio*, 764 A.2d 582 (Pa. Super. 2000) (same).

Herein, the first requirement of the four-part test is met because Appellant timely brought this appeal. However, our review of the record reflects that Appellant did not meet the second requirement because he did

not raise a challenge to the discretionary aspects of his sentence in a post-sentence motion or at the time of sentencing. Therefore, we are constrained to conclude that Appellant's issue challenging the discretionary aspect of his sentence is waived, and we are precluded from addressing the merits of his issue on appeal. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2017